UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VETERANS BROTHERS NO. 126,                          CIVIL ACTION
L.L.C., ET AL.

VERSUS                                                      NO. 16-272

7-ELEVEN, INC., ET AL.                              SECTION "R" (2)

APPLIES TO: NO. 16-434
NO. 16-2034

## ORDER AND REASONS

Before the Court is Third-Party Defendants Imad Hamdan, Brothers Veterans, LLC, Brothers Avondale, LLC, and Brothers Lapalco, LLC's (Third-Party Defendants) motion to stay this case pending arbitration.[1]  Also before the Court is Third-Party Plaintiff SEI Fuel Services, Inc.'s motion to temporarily stay the parties from proceeding in arbitration.[2]   For the following reasons, the Court grants third-party defendants' motion.  For the same reasons, the Court denies third-party plaintiff's motion.

---

[1]    R. Doc. 85.  All docket entries refer to case 2:16-cv-00272 unless otherwise specified.

[2]    R. Doc. 93.

## I.   BACKGROUND

This case is a consolidation of three lawsuits, and the procedural history of the cases can be hard to follow due to the names and corporate identities of all of the players. On December 7, 2015, Veterans Brothers No. 126, LLC filed suit against 7-Eleven, Inc., in the 24th Judicial District Court for the Parish of Jefferson, Louisiana.[3] The suit alleges that despite 7-Eleven's claims that it has the exclusive contractual right to sell and distribute motor fuel to Veterans Brothers, Veterans Brothers is not, and has never been, a party to the alleged contract.[4] In the same court on the same day, Lapalco Brothers No. 125, LLC filed an identical suit against 7-Eleven, making the same allegations as the Veterans Brothers suit.[5] 7-Eleven removed both suits to this Court on January 11, 2016.[6]

On January 26, 2016, Avondale Brothers No. 128, LLC filed a lawsuit in state court identical to those filed by Veterans Brothers and Lapalco Brothers, except this suit was against SEI Fuel rather than 7-Eleven.[7] On February 2, 2016, Veterans Brothers and Lapalco Brothers substituted SEI

---

[3]    R. Doc. 1.  Veterans Brothers No. 126, Lapalco Brothers No. 125, and Avondale Brothers No. 128 are referred to as "Plaintiffs."
[4]    R. Doc. 1-1 at 1.
[5]    R. Doc. 1-1 at 1 in 2:16-cv-00454.
[6]    R. Doc. 1; R. Doc. 1 in 2:16-cv-00454.
[7]    R. Doc. 1-1 at 1 in 2:16-cv-02034.

Fuel for 7-Eleven,[8] and on March 10, 2016, SEI Fuel removed the Avondale Brothers suit to this Court.[9] Avondale Brothers, Veterans brothers, and Lapalco Brothers all sought a declaratory judgment declaring that they are not parties to any contract with SEI Fuel regarding the sale and distribution of gasoline.  On March 15, the Court consolidated the three cases.[10]

On March 11, 2016, SEI Fuel filed its answer to the Veteran Brothers lawsuit, and filed counterclaims against Veteran Brothers, but also named Brothers Veterans, LLC, and Imad Hamdan, as third-party defendants.[11] On the same day, it answered the Lapalco Brothers suit, and filed counterclaims not only against Lapalco Brothers, but also against Brothers Lapalco, LLC, and Hamdan.[12]  On March 28, 2016, SEI Fuel filed its answer to the Avondale Brothers suit and filed counterclaims against Avondale Brothers, Brothers Avondale, LLC, and Hamdan.[13]

SEI Fuel's counterclaims alleged that despite the difference in names of the corporate entities (*e.g.*, Avondale Brothers vs. Brothers Avondale), the entities operated as a single business enterprise.  SEI Fuel sought a

---

[8]     R. Doc. 13.
[9]     R. Doc. 1 in 2:16-cv-02034.
[10]    R. Doc. 21.
[11]    R. Doc. 18.
[12]    R. Doc. 19.
[13]    R. Doc. 23.

declaratory judgment that the corporate entities (no matter how they are named) are obligated to comply with the alleged fuel contracts.  SEI Fuel also brought claims for anticipatory breach of contract and for unfair trade practices under the Louisiana Unfair Practices and Consumer Protection Law.

Initially, neither Brothers Lapalco, Brothers Veterans, Brothers Avondale, nor Hamdan answered the counterclaims in a timely manner.  On September 9, 2016, SEI Fuel sought an entry of default as to those third-party defendants,[14] and the Clerk of Court issued an Entry of Default against those third-party defendants that same day.[15]  On October 12, 2016, SEI Fuel moved the Court to enter a default judgment against those third-party defendants.[16]  Two days later, Brothers Veterans, Brothers Avondale, Brothers Lapalco and Hamdan filed a motion to set aside the entry of default,[17] and filed their answers to SEI Fuel's counterclaims on November 30, 2016.[18]

---

[14]    R. Doc. 48 (Veterans); R. Doc. 52 (Avondale); R. Doc. 55 (Lapalco); R. Doc. 49, 51, and 53 (Hamdan). Veterans Brothers, Lapalco Brothers, and Avondale Brothers answered SEI Fuel's counterclaims.

[15]    R. Doc. 57 (Veterans); R. Doc. 60 (Avondale); R. Doc. 62 (Lapalco); R. Doc. 58, 59, and 61 (Hamdan).

[16]    R. Doc. 69.

[17]    R. Doc. 73.

[18]    R. Doc. 103; R. Doc. 104; R. Doc. 105.

While the motions for default judgment and to set aside the entries of default were pending, on November 7, 2016, Brothers Veterans, Brothers Avondale, Brothers Lapalco and Hamdan filed a motion to stay the consolidated case pending the resolution of arbitration proceedings between the parties.[19]  They also attached an arbitration demand, dated November 1, 2016, that they sent to SEI Fuel via overnight mail.[20]  On November 11, 2016, SEI Fuel filed its opposition to third-party defendants' motion,[21] and simultaneously filed a motion to temporarily stay the parties from proceeding in arbitration.[22]  Third-party defendants opposed SEI Fuel's motion,[23] and both parties filed replies.[24]

On December 27, 2016, the Court found that third-party defendants had shown good cause and granted their motion to set aside the entries of default.[25]  The Court now addresses the remaining motions.

---

[19]    R. Doc. 85.
[20]    R. Doc. 85-2.
[21]    R. Doc. 92.
[22]    R. Doc. 93.
[23]    R. Doc. 100.
[24]    R. Doc. 99; R. Doc. 108.
[25]    R. Doc. 114.

## II.   LEGAL STANDARD

There is a "strong federal policy in favor of enforcing arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). The Federal Arbitration Act states that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.

An application for arbitration by either party under Section 3 "requests the district court to refrain from further action in a suit pending arbitration, and requires the court to first determine whether there is a written agreement to arbitrate between the parties, and then whether any of the issues raised are within the reach of the agreement." *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prod. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) (citing *Midwest Mech. Contractors, Inc. v. Commonwealth Const. Co.*, 801 F.2d 748, 750 (5th Cir. 1986)). "If the issues in a case are within the reach of that [arbitration] agreement, the district court has no discretion under section 3 to deny the stay." *See id.* (citation omitted).

Despite the strong federal policy favoring arbitration, the right to arbitration may be waived. *See Frye v. Paine, Webber, Jackson & Curtis,*

6

*Inc.*, 877 F.2d 396, 398 (5th Cir. 1989) (citing *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158 (5th Cir. 1986)). The party asserting waiver has a heavy burden, but "waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Id.* (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986)).

## III.   DISCUSSION

Third-party defendants argue that the Court should stay this case pending resolution of arbitration proceedings between the parties.   In support, they point to the Branding and Product Purchase Commitment Agreements between third party defendants and LavigneBaker Petroleum, LLC (SEI Fuel's predecessor in interest), which all contain the following provision:

> Dispute Resolution.  Except for any matter arising out of Article 6 (*Right of First Refusal*), for which Seller may pursue any remedy available at law or in equity, . . . all disputes between Seller and Buyer arising out of, relating to, or in connection with this Agreement, including, without limitation, any Claim or question relating to this Agreement's negotiation, performance, non-performance, interpretation or termination or the relationship between Seller and Buyer contemplated or established by this Agreement, shall be referred to and finally resolved pursuant to the dispute resolution provisions of

**Schedule B** of the Purchase Agreement.  This section 7.3 shall survive indefinitely.[26]

Schedule B contains the following provision:

> Agreement to Arbitrate.  Except as provided in any Transaction Document, any dispute between the parties arising out of, relating to, or in connection with any Transaction Documents to which this **Schedule B** relates, including any Claim or question relating to any Transaction Document's negotiation, performance, non-performance, interpretation, termination or the relationship between the Parties established by any Transaction Document . . . shall be referred to and finally and exclusively resolved by arbitration in accordance with the CPR Rules for Non-Administered Arbitration, as such rules may be in effect on the date of such Transaction Document . . . .[27]

"Transaction Documents" are defined in the agreement as "the Purchase Agreement, the Limited Warranty Deeds, the Assignments of Lease, the Sublease, Bill of Sale, the Assignment of Contracts, the Assignment of Dealer Instruments, the WMA, the Branding Agreement, the Access Agreement and the Guarantee."[28]  The "Guarantee" referred to in the definition of "Transaction Documents" is a Guarantee signed by Hamdan whereby Hamdan irrevocably and unconditionally guarantees the full and prompt

---

[26]    Exhibit B, R. Doc. 85-3 at 14 (Veterans); *Id.* at 60 (Lapalco); *Id.* at 131 (Avondale).

[27]    Exhibit C, R. Doc. 85-4 at 59.

[28]    *Id.* at 57.

payment and performance of the obligations in the Purchase and Branding Agreements.[29]

Therefore, according to third-party defendants, there exists a written agreement to arbitrate between third-party defendants and SEI Fuel. Further, third-party defendants argue that SEI Fuel's claims against third-party defendants are within the reach of the arbitration agreement.[30]  Thus, in accordance with the strong policy in favor of arbitration and the agreements at issue, third-party defendants argue that the Court should stay this case pending resolution of the claims through arbitration.

SEI Fuel does not dispute that the contracts in question contain an agreement to arbitrate, nor does not it contest that the claims asserted by SEI Fuel against third-party defendants fall within the coverage of the arbitration provisions.   Instead, SEI Fuel argues that third-party defendants have waived their right to arbitrate by substantially invoking the judicial process to the prejudice of SEI Fuel.[31]  Waiver of the right to arbitrate is an issue for the Court to decide.  *See, e.g., Tristar Fin. Ins. Agency, Inc. v. Equicredit*

---

[29]    R. Doc. 85-3 at 137.
[30]    R. Doc. 85-1 at 4.
[31]    R. Doc. 92 at 6-14.  SEI Fuel also argued in its motion that third-party defendants' motion to stay should be denied because it was an attempt to "circumvent the judicial consequences of their defaults."  *Id.* at 5.  The Court has since set aside third-party defendants' entries of default, R. Doc. 114, and therefore this argument is now moot.

*Corp. of Am.*, 97 F. App'x 462, 464 (5th Cir. 2004) (per curiam) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).  SEI Fuel's waiver argument relies on imputing the actions of the plaintiffs in this case to third-party defendants, either as alter-egos, or by treating plaintiffs and third-party defendants as a single business enterprise.  The Court will address the waiver argument first.

As mentioned above, the right to arbitrate is not absolute, and it can be waived.  *See Frye*, 877 F.2d at 398 (5th Cir. 1989).  SEI Fuel, as the party asserting waiver, must overcome a heavy burden.  *Id.*  To show that third-party defendants have waived their right to arbitrate, SEI Fuel must show that third-party defendants have "substantially invoke[d] the judicial process to the detriment or prejudice of the other party."  *Id.* (quoting *Miller Brewing Co.*, 781 F.2d at 497 (5th Cir. 1986)).  Echoing the strong policy in favor of arbitration, the Supreme Court has instructed that any doubts "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Further, the Fifth Circuit has made clear that there is a "strong presumption against finding a waiver of arbitration."  *Al Rushaid v. Nat. Oilwell Varco, Inc.*, 757 F.3d 416, 421-22

10

(5th Cir. 2014) (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004).

### A.  Substantial Invocation of Judicial Process

In order to "invoke the judicial process, a party must have litigated the claim that the party proposes to arbitrate." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328-29 (5th Cir. 1999); *see also Nicholas v. KBR, Inc.*, 565 F.3d 904, 908 (5th Cir. 2009) ("We conclude that the act of a plaintiff filing suit without asserting an arbitration clause constitutes substantial invocation of the judicial process.").  Because it was plaintiffs, and not third-party defendants, who initiated this matter by filing suit, SEI Fuel cannot show that third-party defendants substantially invoked the judicial process unless it can impute plaintiffs' actions to third-party defendants.

SEI Fuel cites the case *Al Rushaid v. National Oilwell Varco, Inc.*, 757 F.3d at 422, to argue that when determining waiver, the Court may impute the actions of an arbitration proponent's affiliate to the proponent "when principles of agency or corporate law, such as the alter ego doctrine, would counsel such imputation."  But the quotation relied on by SEI Fuel from *Al Rushaid* is clearly referring to two non-Fifth Circuit cases.  *Id.* n.19 (citing *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 456-57 (2d Cir. 1995); *Yates v.*

11

*Doctor's Assocs., Inc.*, 549 N.E.2d 1010, 1017 (Ill. App. Ct. 1990)).[32]   *Al Rushaid* made clear that the Fifth Circuit had yet to address "when, if ever, the actions of an arbitration proponent's codefendants may be imputed to that proponent for the purposes of determining waiver." *Id.*  Additionally, *Al Rushaid* overturned the district court's imputation of the proponent's codefendants' actions to the proponent and made clear that shared ownership between the codefendants, identical legal counsel, benefitting from the codefendants' discovery in the lawsuit, and facilitation of a lengthy discovery process by refusing service, were all insufficient, either in isolation or in combination, to warrant imputation.  757 F.3d at 423.  Therefore, the Fifth Circuit has not yet instructed on what conditions are sufficient to impute an arbitration proponent's affiliated codefendants' actions to the proponent.

*Al Rushaid* did suggest, without deciding, that if the proponent was the alter ego of the affiliated codefendants, or if there were grounds to pierce the defendants' corporate veils, "it [would] be appropriate to hold [the

---

[32]     Both *Distajo* and *Yates* are non-precedential, but *Yates* is of even less value to the Court because *Yates* held that the Federal Arbitration Act (and therefore the strong policy in favor of arbitration) did not apply.  549 N.E.2d at 1015.

proponent] responsible for its codefendants' actions."[33]  *Id.* at 724.  This suggests that SEI Fuel would have to establish that there are grounds to pierce third-party defendants' corporate veil and disregard their corporate structure to impute plaintiffs' actions to third-party defendants.

SEI Fuel argues that there are two bases for piercing the corporate veil: the alter-ego theory and single-business-enterprise theory.  Caselaw suggests that the factors used in piercing the corporate veil on an alter-ego basis should guide the single business enterprise determination as well.  *See Grayson v. R.B. Ammon & Assocs., Inc.*, 778 So. 2d 1, 14 (La. App. 1 Cir. 2000); *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir. 2010) ("Under Louisiana law, the factors to be considered to determine whether one entity is an alter ego of another or whether two entities are a 'single business enterprise' are similar.") (citing *Green v. Champion Ins. Co.*, 577 So. 2d 249, 257-58 (La. App. 1 Cir. 1991).

The Louisiana Supreme Court has instructed that factors to consider when determining whether the apply the alter-ego doctrine "include, but are

---

[33]     Thus, *Al Rushaid* does not establish that agency principles alone are sufficient to impute the actions of plaintiffs to Hamdan and third-party defendants.   SEI Fuel points only to *Al Rushaid* to argue that agency principles are sufficient.   Nevertheless, SEI Fuel is incorrect to suggest that Hamdan and third-party defendants have conceded an agency relationship with plaintiffs, solely because Hamdan manages each plaintiff.  R. Doc. 92 at 6-7.

not limited to: 1) comingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings." *Riggins v. Dixie Shoring Co., Inc.*, 590 So.2d 1164, 1168 (La. 1991) (citations omitted).  Other factors used by other courts include "common ownership, directors and officers, employees, and offices; unified control; . . . one corporation paying the salaries, expenses, or losses of another corporation; and undocumented transfers of funds between entities." *Jackson*, 615 F.3d at 587 (citation omitted).  No single factor is dispositive, *id.*, and courts should consider the totality of the circumstances, *Huard v. Shreveport Pirates, Inc.*, 147 F.3d 406, 409 (5th Cir. 1998).

These factors, however, must be analyzed keeping in mind that Louisiana law strongly cautions against piercing the corporate veil and disregarding the corporate structure.  *See id.* (describing veil piercing as a "drastic remedy" that should only be used in "exceptional circumstances"); *Riggins*, 590 So.2d at 1168; *see also* Stephen B. Presser, PIERCING THE CORPORATE VEIL § 2:19 (2016) ("Piercing the veil is regarded as an exceptional remedy in Louisiana.").  As both Louisiana and federal courts have recognized, the corporate structure ordinarily should not be disregarded

14

absent some showing of fraud or deceit, or that piercing the veil is necessary to avoid inequitable results. *See Riggins*, 590 So.2d at 1168-69; *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 335 (5th Cir. 2007) ("Typically, the veil piercing theory is implemented . . . when a juridical person is used to defeat public convenience, justify wrong, protect fraud, or defend crime.") (quotation omitted); *Huard*, 147 F.3d at 409 ("The Louisiana courts have indicated that the corporate veil should be pierced when adherence to the corporate fiction would clearly result in inequity."). If fraud is not alleged, the proponent of piercing the veil bears a heavy burden of proof. *Id.* at 410. Further, where, as here, the underlying claim sounds in contract, the factors are "less likely to tip in favor of disregarding the corporate veil." *Id.* at 409.

SEI argues that many of the veil-piercing factors are present in this case. More specifically, SEI points to: that Hamdan organized each plaintiff and third-party defendant on the same day; that Hamdan actively manages each plaintiff and third-party defendant; that Hamdan is a member of each plaintiff and third-party defendant; that Hamdan signed the latest annual report for each plaintiff and third-party defendant; that each plaintiff and third-party defendant have the same registered office address; and that Hamdan allegedly has referred to plaintiffs and third-party defendants

interchangeably.[34]  Additionally, SEI Fuel contends that documents obtained in discovery show Hamdan's inconsistencies and further demonstrate alter ego status.  SEI Fuel contends that these documents show that: though plaintiffs assert in their lawsuits that they own the convenience stores at issue in this case, unrecorded leases establish that third-party defendants own the stores and have leased them to plaintiffs; that Hamdan claims to have transferred 100 percent of his membership interest in each plaintiff to Brothers Petroleum, LLC, but he continues to sign annual filings with the Louisiana Secretary of State as a "member" of each plaintiff; and that Hamdan breached the contracts in question by transferring the ownership and possession of the stores from third-party defendants to plaintiffs.[35]

The Court finds that this evidence is insufficient to warrant piercing the corporate veil, either on the alter-ego or single business enterprise basis. Much of the evidence pointed to by SEI Fuel, including that Hamdan is a member of and actively manages each plaintiff and third-party defendant and that the plaintiffs and third-party defendants have the same address is often present in corporate situations and to pierce the corporate veil solely because of shared ownership or participation would defeat the purpose of

---

[34]     R. Doc. 92 at 8-9.
[35]     *Id.* at 9-10.

16

corporate separateness.  The Fifth Circuit has already established that joint ownership or shared membership is insufficient to impute the actions of codefendant corporate affiliates to another codefendant seeking arbitration. *Al Rushaid*, 757 F.3d at 423-24.  Further, there is no evidence of commingling of funds, abuse of Louisiana corporate formalities, undercapitalization, failure to provide separate bank accounts or bookkeeping records, or undocumented transfer of funds.  Even if there was some evidence that Hamdan, plaintiffs, and third-party defendants were alter egos, the absence of the other factors and lack of evidence indicating that corporate formalities were ignored weighs against finding that the entities are alter egos. *See Jackson*, 615 F.3d at 588 (declining to find alter ego despite "some factors in favor . . . and some factors against"); *see also Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990) (declining to find alter ego even though one entity owned 100 percent of subsidiary, was responsible for corporate policy, and filed consolidated tax returns because those factors were outweighed by observation of corporate formalities).

Additionally, SEI Fuel has not alleged fraud, and does not explain how piercing the corporate veil will prevent inequity.  Aside from conclusorily alleging that Hamdan's actions are "designed to mislead his contractual

partners and the public at large,"[36] SEI Fuel does not identify the inequity that will result if the corporate veil is not pierced.  The prejudice that SEI Fuel has allegedly suffered because of the delay in invoking arbitration, mainly that SEI Fuel has spent legal fees and wasted time, does not rise to the level of inequity necessary to warrant the extraordinary action of piercing the corporate veil, *see Al Rushaid*, 757 F.3d at 424,[37] especially considering the underlying claims here are based on contract, *see Huard*, 147 F.3d at 409.  Therefore, SEI Fuel has not shown that piercing the corporate veil is warranted, and the actions of plaintiffs in filing these cases will not be imputed to Hamdan and third-party defendants.

As established above, SEI Fuel has a heavy burden in establishing that third-party defendants and Hamdan have waived the right to arbitration, and there is a "strong presumption against finding a waiver of arbitration." *Al Rushaid*, 757 F.2d at 422 (citation omitted).  But SEI Fuel's argument for waiver must also overcome the strong presumption in Louisiana law against

---

[36]     *Id.* at 10.

[37]     *Al Rushaid* rejected plaintiffs' argument that delay and expense were the type of "unjust" or "inequitable" results that would warrant piercing the corporate veil.  757 F.2d at 424.  Though *Al Rushaid* was applying Texas law, Texas courts, like Louisiana courts, have established that piercing the veil is an extraordinary remedy only to be used when necessary to avoid fraud or an inequitable result.  *Id.* (citing *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2009).

piercing the corporate veil.  SEI Fuel has not met its burden in establishing that piercing the corporate veil is warranted, and therefore cannot show that third-party defendants and Hamdan have substantially invoked the judicial process.  Thus, SEI Fuel cannot meet its burden in establishing that Hamdan and third-party defendants have waived the right to arbitration.[38]

## B.    Additional Discovery

In the alternative, SEI Fuel asks the Court to allow for additional discovery so that SEI Fuel may obtain more information to establish its alter-ego or single business enterprise theories.[39]  While courts have allowed pre-arbitration discovery, *see e.g.*, *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013), the two cases cited by SEI Fuel are cases in which no discovery had taken place before arbitration was ordered.  *See id.* at 780 ("[G]iven that no discovery has taken place, any summary conclusion is unwarranted."); *THI of New Mexico at Hobbs Ctr., LLC v. Spradlin*, 532 F. App'x 813, 819 (1oth Cir. 2013) (noting that district court decided case without providing opportunity for discovery).  Here, SEI Fuel has engaged in discovery with plaintiffs for some time, and indeed relies on

---

[38]    Because SEI Fuel has not established that Hamdan and third-party defendants have substantially invoked the judicial process, the Court need not opine on whether SEI Fuel has suffered prejudice.

[39]    R. Doc. 92 at 14-15.

materials obtained through discovery in arguing for piercing the corporate veil.[40]   Therefore, this is not a situation in which Hamdan and third-party defendants are the only parties with access to the information needed by SEI Fuel to make their argument.  *Cf. Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-177, 2011 WL 938785, at *8 (W.D. La. Feb. 9, 2011). Further, SEI Fuel's argument that Hamdan has evaded the ongoing discovery through a pattern of delay is unavailing, given SEI Fuel did not oppose three extensions of time granted to plaintiffs to respond to discovery requests in this case.[41]

Additionally, unlike in *Smoothline Ltd. v. N. Am. Foreign Trading Corp.*, No. 00-2798, 2002 WL 273301, at *5-6 (S.D.N.Y. Feb. 27, 2002), SEI Fuel has not alleged fraud or shown that piercing the corporate veil is warranted, and therefore further discovery on the matter is not warranted either.  *Cf. id.* at 6 (ordering discovery on alter-ego theory because defendant alleged conduct that was "sufficient to constitute fraud or wrong for purposes of veil-piercing").  As described above, SEI Fuel did not allege fraud, nor did it adequately explain why piercing the veil was necessary to prevent inequity,

---

[40]    R. Doc. 92 at 8 ("Documents obtained in discovery further demonstrate the alter ego corporate shell game that Hamdan is playing.").

[41]    R. Doc. 46 at 2; R. Doc. 101 at 2; R. Doc. 115 at 2.

despite already engaging in discovery, and therefore additional discovery is not warranted.

Finally, the additional discovery requested by SEI Fuel would, at best, help SEI Fuel establish that piercing the corporate veil would be warranted. While this may result in the imputation of plaintiffs' litigation actions to third-party defendants, SEI Fuel would still have to show it has suffered prejudice in order for the Court to find that third-party defendants waived their right to arbitrate.  But the prejudice complained of here, mainly delay and legal fees,[42] will only increase if the Court allows additional discovery. The Court will not let SEI Fuel delay arbitration proceedings to attempt to pierce the corporate veil and then use the delay and associated legal expenses to argue that it has been prejudiced.

Because Hamdan and third-party defendants have shown that there is an agreement to arbitrate that covers the present dispute, their motion to stay this case pending resolution through arbitration is granted.  Because the Court finds that Hamdan and third-party defendants have not waived the right to seek arbitration, SEI Fuel's motion to stay the parties from proceeding in arbitration is denied.

---

[42]     R. Doc. 92 at 12-13.

## IV.   CONCLUSION

For the foregoing reasons, third-party defendants' motion to stay the entire proceeding pending arbitration is GRANTED.  For the same reasons, third-party plaintiff's motion to stay the parties from proceeding in arbitration is DENIED.

New Orleans, Louisiana, this __24th__ day of January, 2017.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE